RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

MAR 25 2025

DANIEL J. McCOY, CLERK
BY:_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

AMERICAN OUTFITTER, LLC
d/b/a LG OUTDOORS, and
AMERICAN FREEDOM, LLC
d/b/a WHOLESALE HUNTER,

    Plaintiffs,

V.

HAYDEL'S GAME CALLS, INC.,

    Defendant.
_____/

Civil Action No.

Hon.

## COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, NON-COUNTERFEITING, AND RELATED RELIEF

Plaintiffs American Outfitter, LLC d/b/a LG Outdoors ("LG Outdoors"), and American Freedom, LLC d/b/a Wholesale Hunter ("Wholesale Hunter") (collectively, "Plaintiffs" or "American"), for their Complaint against Defendant Haydel's Game Calls, Inc. ("Haydel") says:

### NATURE OF THE ACTION

1. American brings this action seeking this Court's declaration to put a stop to Defendant's unfounded accusations of trademark infringement. For more than 15 years, American has sold a wide and growing variety of outdoor sporting accessories and other goods in the Amazon online marketplace. Every one of the products American sells are genuine goods obtained through legal and proper distribution channels. For reasons known only to Haydel, however, it has submitted false notices to Amazon accusing American of infringing its trademark. Each time this happens, American's sales are interrupted and its standing with Amazon and the public are diminished. Having failed to resolve these false claims through informal persuasion, and because Haydel is either unable or unwilling to retract its false infringement reports or to undo the damage

they have done to the health rating of American's Amazon accounts, American is now constrained to seek the assistance of this Honorable Court in redeeming American's good name and putting an end to Defendant's reckless and baseless accusations.

## PARTIES

2. LG Outdoors and Wholesale Hunter are each an Alabama limited liability company with its principal place of business in Wetumpka, Alabama. Further, the members of each Plaintiff are residents of Alabama. Both companies are under common ownership.

3. Haydel is a Louisiana corporation with its principal place of business located in 5018 Hazel Jones Rd., Bossier City, Louisiana 71111.

## JURISDICTION AND VENUE

4. This is a civil action arising under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and the Lanham Act, 15 U.S.C. §1051, *et seq*. Subject matter jurisdiction is conferred upon this Court under 15 U.S.C. §1121 and 28 U.S.C. §1331, 1332, 1338, and 1367.

5. More specifically, this Court has federal question subject matter jurisdiction over this declaratory judgment action because Defendant has made accusations of federal trademark infringement against American.

6. This Court has supplemental jurisdiction over the state law claims alleged herein because their subject matter is so inextricably linked to the federal claims as to form one controversy.

7. Additionally, this Court has diversity jurisdiction over these claims, because the parties are residents of different states, and the amount in controversy is greater than $75,000.

8. This Court has personal jurisdiction and venue over Defendant because Defendant is incorporated in Louisiana, and its principal place of business is in Bossier City, Louisiana.

9. American initially sought relief for these claims against Defendant in the Middle District of Alabama (Case No. 2:24-cv-00391-SMD). Chief Magistrate Judge Stephen Michael Doyle dismissed the action after finding that there was no personal jurisdiction over Defendant in Alabama. In it motion papers seeking that dismissal, Defendant conceded that jurisdiction and venue were proper in this Court.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### American's Amazon Accounts

10. LG Outdoors and Wholesale Hunter operate eponymous virtual storefronts within the Amazon.com online marketplace[1] (the "Storefronts"). Each is a successful, profitable business operation and has developed a growing customer base over their years of operation.

11. Exactly as any comparable brick-and-mortar retail store would do, American's Storefronts offer for sale products that appeal to their target consumers that come from a variety of manufacturers.

12. More than 10,000 products are available through each Storefront, from over a dozen separate manufacturers.

13. Each product sold through the Storefronts is a genuine product obtained by American through legitimate means.

14. Additionally, with respect to the products at issue in this case and others, American acts merely as a drop shipper for Amazon. In other words, Amazon itself lists the product for sale, using information of its choosing, and fulfills orders for the products through the Storefronts and/or any other seller who informs Amazon that they have inventory of the product. When Amazon sells the product, it receives payment, then instructs the seller (whether American or another seller)

---

[1] Located at (https://www.amazon.com/s?me=A2B2TXVNKFJH7I&marketplaceID=ATVPDKIKX0DER ) and (https://www.amazon.com/s?i=merchant-items&me=A3TLY47US33C3C) , respectively.

where to ship it.

### Defendant's Reckless and False Infringement Accusations

15. Haydel sells game calls.

16. On or about May 1, 2024, Haydel filed complaints with Amazon falsely asserting that products being sold by Wholesale Hunter and LG Outdoors were "counterfeit" products bearing its trademark—specifically, U.S Trademark Reg. 5884266 for the mark HAYDEL'S GAME CALLS INC. (**Exhibit A.**)

17. Also in or about May 2024, Haydel filed several trademark infringement complaints with Amazon alleging that certain products being sold by Wholesale Hunter and LG Outdoors infringed its trademark—specifically, U.S Trademark Reg. 5884266 for the mark HAYDEL'S GAME CALLS INC. (**Exhibit B.**)

18. The text of Haydel's infringement complaints to Amazon read substantially as follows:

> *The product has a label applied to it or a logo on the packaging that reads "Haydel's Game Calls, Inc." and is included in a listing that is branded "Haydel's Game Calls". I own the trademark for "Haydel's Game Calls, Inc" and this product should not be branded "Haydel's Game Calls".*

19. The listing excerpted below is materially identical to the ones Haydel complained about, except that it identifies a different seller ("Gritr") instead of one of the Storefronts:



20. These allegations do not describe trademark counterfeiting or infringement.

21. Haydel's complaints begin by accurately noting that the product depicted in the listing bears the HAYDEL'S GAME CALLS INC. That is because the product being sold is a genuine Haydel product. It is not a counterfeit or an infringement of Haydel's trademark to use that trademark in order to accurately describe Haydel's product.

22. Haydel's complaint then goes on to state that the product "*is included in a listing that is branded 'Haydel's Game Calls' … [instead of] 'Haydel's Game Calls, Inc'.*" In the example screenshot above, that abbreviation appears in the listing header as well as the "Brand" line directly underneath it.

23. In other words, Haydel's *entire* theory of trademark infringement hinges on whether the Amazon listing appends the abbreviation "Inc." to Haydel's company name.

5

24.     Abbreviating Haydel's corporate name in this manner is not a trademark counterfeiting or infringement, for several reasons. For one thing, by Haydel's own admission, the full mark (as Haydel prefers it) *does* appear in the listing—on the product itself. For another, to identify Haydel without the "Inc." (whether standing alone or in adjacent references) does nothing to cause customer confusion. Neither the Storefronts nor Amazon in this instance are purporting to be a different company named "Haydel's Game Calls" as opposed to "Haydel's Game Calls Inc." It is merely an abbreviation of Haydel's name and mark.

25.     Long-standing trademark law confirms that the "Inc." portion of a company's name does nothing to distinguish a mark or product, and carries no independent trademark significance. *See, e.g., Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598, 602 (1888).

26.     Indeed, the USPTO required Haydel to disclaim trademark rights in the entire phrase "GAME CALLS INC." before it would register Haydel's trademark.

27.     This common-sense fact is further demonstrated by Haydel's own frequent use of "Haydel's Game Calls" (without the "Inc.") to refer to itself on its own website and products:[2]

---

[2] Examples from https://www.haydels.com/collections/accessories/products/tk-01-tune-up-kit-double-reed-mallard and https://www.haydels.com/pages/about-us ,



28. Further, American has no input into how Amazon chooses to describe the goods in question. American merely reports to Amazon that it has inventory of goods bearing certain UPC codes, and then relies on Amazon to populate and publish the listing.

29. In response to Haydel's complaint, Amazon suspended part or all of the Wholesale Hunter Storefront for several days. American lost a significant amount of sales revenue during that downtime. Sales for comparable periods of time suggest that the amount of lost revenue far exceeds $75,000.

30. Further, each trademark complaint that Amazon receives regarding a seller's account reduces what Amazon calls the seller's "Account Health Rating." A decreased rating results in restrictions and punishments levied on the account by Amazon, including but not limited to suspension or deactivation of an account.

31. On information and belief, Haydel has also made additional false statements about American and its alleged violation of Haydel's trademark rights.

32. Each of the foregoing false accusations that Haydel has made about American, along with any other similar false statements that American has yet to discover (the "Accusations") has reduced Amazon's Account Health Rating for American's Storefronts.

33. Indeed, as a result of the damage Haydel did to the Storefronts' heath ratings, Amazon has subsequently disabled the Wholesale Hunter Storefront again, after having restored it for only a handful of days. At this point, the Wholesale Hunter account may be permanently disabled.

34. On multiple occasions in May and June 2024, representatives of American contacted Haydel by email and by phone to explain the situation and request that it retract the Accusations.

35. On one phone call in particular, on June 20, 2024, representatives of Haydel made clear that Haydel's false Accusations are misdirected. During the call, American's representative attempted to explain why American is not infringing any of the Haydel marks, and Haydel's representative explained that Haydel has a problem with a second, unknown Haydel brand being listed on Amazon.

36. On the June 20 call, Haydel's representative expressly acknowledged, "Amazon really is the one who needs to resolve that," referring to the problem with Haydel's branding on Amazon.

37. Additionally, on the June 20 call, Haydel's further acknowledged that American was not the entity responsible for Haydel's brand problems on Amazon, stating that "someone else" made the Haydel brand and that they did so "improperly."

38. Despite acknowledging it was "impossible to know who" created the second Haydel brand, Haydel's representative refused to try to reverse the damage it had dealt to American and its Storefronts.

39. The June 20 call revealed yet another motivation for the false Accusations. Haydel's representative explained that sellers on Amazon "undercut every one of [her] dealers." The Haydel representative made clear, "that's the only reason why I've gotten on Amazon and tried to fight the representation on Amazon." American continued to explain why Haydel needed to retract the Accusations, but Haydel refused.

40. Indeed, American tried to adjust its listings to comply with Haydel's wishes, but Haydel actively prevented it from doing so.

41. In sum, despite hours of conversation between the parties between May and June, Haydel refused to retract the Accusations.

42. American learned from these conversations that one of Haydel's primary motivators is to control the price at which American and other resellers offer Haydel products. Specifically, Haydel has set MAP (or minimum advertised price) figures for its products, and is using trademark law to punish resellers who either don't have Haydel's permission to sell its goods or who offer them for less than the MAP. Indeed, when American reached out to Haydel in an effort to resolve its concerns with the Amazon listings, Haydel refused to cooperate, saying "You did not have permission to sell them on Amazon to start with and have been violating MAP for years."

43. Yet trademark law does not give Haydel the power to do either of these things. Once American acquires Haydel products from Haydel's authorized wholesalers, the trademark exhaustion doctrine deprives Haydel of the right to exercise any further control over who resells the products or over what price they charge.

44. All of the information about the Haydel products in American's Amazon listings was supplied by Haydel to Amazon.

45. There is nothing inaccurate or "inauthentic" about the products or information in American's listings. Haydel simply wants to control how third parties describe and sell its goods, in ways that trademark law does not permit. And it was willing to sully and slander American's good name with Amazon in order to accomplish that anti-competitive goal.

46. Upon information and belief, Haydel had other means of mitigating this problem instead of defaming American, as Defendant apparently controls the information on American's listings of Haydel's products. Comparing Amazon product sale listings offered by American in the past with present-day listings shows Haydel was able to change the "Brand" listed under "Product Information" to "Haydel's Game Calls Inc." (**Exhibit C**, Cached and Current Listings.) It is thus

10

unknown why Haydel deliberately made American collateral damage in what appears to be a dispute among Haydel, Amazon, and some other third-party.

47. On information and belief, Haydel has permitted, or at least chosen not to object, to other third-party sellers selling Haydel goods under the "Haydel Game Calls" brand tag on Amazon.

48. This further demonstrates that Haydel's real motivation here is to punish American and to control who may resell its products, rather than to protect any legitimate trademark rights.

49. Further, on information and belief, at least some of Haydel's trademark complaints are barred (a) by laches, in light of the amount of time Haydel was aware of American's listings without acting, to American's prejudice, and/or (b) because they pre-date Haydel's trademark registration.

50. As of this filing, despite Haydel's claim to have retracted its complaints, it appears that Defendant still has not withdrawn its Accusations, and suspension of one or more of the Storefronts by Amazon remains a distinct possibility. Indeed, because of the injury Haydel has done to its Amazon Health Rating, the Wholesale Hunter account may already be permanently disabled.

51. But for the false accusations of trademark infringement and counterfeiting that Haydel made against American, both Storefronts would still be in business today, and would never have been taken down at any point during the relevant time period (*i.e.*, the period beginning with Haydel's first Accusation).

52. American has been injured by Defendant's reckless and unfounded actions, including but not limited to lost sales, decreased goodwill with customers and potential customers, decreased standing with Amazon, and the lost time and distraction caused by needing to respond

to the Accusations.

53. American has a reasonable apprehension that Defendant will continue to submit similar Accusations against American to Amazon in the future, causing further injury to American. Indeed, Haydel's representative has pledged to continue her ill-founded trademark campaign.

54. Defendant did not have sufficient evidence to support its Accusations, nor did Defendant conduct the requisite investigation before making its Accusations.

## COUNT I
## Declaratory Judgment

55. American incorporates by reference herein each of the foregoing paragraphs.

56. There is an actual controversy within the jurisdiction of this Court between American and Haydel as to the matters described herein—in particular, whether or not American has infringed or counterfeited Haydel's trademarks, and whether or Haydel acted without justification in causing Amazon to take punitive action against American.

57. It would serve the interests of justice for this Court to grant American's requested relief and declare the respective rights and legal relations of the parties with respect to these issues.

58. For the reasons stated above and other reasons, American is entitled to a declaration that it has not infringed, counterfeited, or otherwise violated any trademark rights that Haydel may have.

59. This is an extraordinary case as defined by the Lanham Act.

60. American is further entitled to recovery of monetary damages incurred as a result of Defendant's Accusations, as well as recovery of its costs and legal fees under the Lanham Act and any other relevant authority, and to an injunction prohibiting Defendant from making similar Accusations against American in the future without supporting evidence.

## COUNT II
### Defamation
*(Under Louisiana Law; La. Civ. Code Ann. art. 2315 and/or Alabama Law)*

61. American incorporates by reference herein each of the foregoing paragraphs.

62. The Accusations are false. American did not infringe Haydel's trademarks.

63. The Accusations are defamatory *per se*, as they tended to injure American's business reputation and accused American of committing a crime.

64. The Accusations caused actual injury to American's reputation with both consumers and with Amazon, and caused American to lose business revenue.

65. Defendant published the Accusations to third parties, including at a minimum to Amazon.

66. Defendant were not privileged to make the Accusations.

67. Defendant made the Accusations negligently.

68. Defendant made the Accusations with reckless disregard as to whether or not they were false.

69. On information and belief, Defendant made the Accusations with actual knowledge that they were false.

70. American is a private, not public, figure with respect to the Accusations for the purposes of defamation law.

71. Defendant is liable to American for defamation.

72. Defendant is liable for actual damages, presumed damages, and exemplary/punitive damages.

## COUNT IV
### Intentional Interference With Business/Contractual Relations
*(Under Louisiana Law; La. Civ. Code Ann. art. 2315 and/or Alabama Law)*

73. American incorporates by reference herein each of the foregoing paragraphs.

74. American had, and has, a protectable interest with potential and actual consumers of the products it offers through the Storefronts.

75. American had, and has, a protectable interest in its relationship with Amazon.

76. Defendant was aware of these protectable interests.

77. Defendant was a stranger to these protectable interests.

78. Defendant intentionally interfered with these protectable interests.

79. Defendant interfered for an improper motive—*i.e.*, for monopolistic, anti-competitive reasons and to control the actions of third-party sellers that exceed what trademark law allows.

80. Defendant's intentional conduct was motivated out of spite or ill will, not merely by a profit motive.

81. American was damaged as a result of Defendant's interference.

82. Defendant is liable to American for, among other things, (1) the pecuniary loss of the benefits of its relations with Amazon and with its potential customers; consequential losses for which the interference is a legal cause; emotional distress or actual harm to reputation if either is reasonably to be expected to result from the interference; and (4) punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, American prays that the Court enter judgment against Defendant and grant American the following relief:

A. A declaration that American has not infringed or counterfeited any trademark rights that Haydel or any of its clients may have.

B. Permanent injunctive relief forbidding Defendant from making similar Accusations against American without credible supporting evidence.

C. Recovery of its costs and legal fees under the Lanham Act and any other relevant authority.

D. Award American other such relief, in law or in equity, as this Court deems appropriate.

Date: March 21, 2025

Respectfully submitted,

WARNER NORCROSS + JUDD LLP
Attorneys for Plaintiffs

By: */s/ Brian D. Wassom*
    Brian D. Wassom (MI Bar No. P60381)
    *Motion to appear pro hac vice pending*
12900 Hall Road, Suite 200
Sterling Heights, MI 48313
(586) 303-4139
bwassom@wnj.com

## CERTIFICATE OF SERVICE

I certify that on March 21, 2025, the foregoing document was filed with the Clerk of the Court, via the ECF system, which will provide electronic notification of the filing upon all parties of record.

/s/ Denise A. Keilch
Denise A. Keilch